UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| CLIFFORD SMITH,<br><br>　　　　　Plaintiff,<br><br>　　v.<br><br>GREEN, et al.,<br><br>　　　　　Defendants. | Case No.: 1:13-cv-00880-DAD-BAM (PC)<br><br>FINDINGS AND RECOMMENDATION RECOMMENDING DEFENDANTS' MOTION FOR SUMMARY JUDGMENT BE GRANTED<br>(ECF No. 24)<br><br>**FOURTEEN (14) DAY DEADLINE** |

**FINDINGS AND RECOMMENDATIONS**

Plaintiff Clifford Smith ("Plaintiff") is a state prisoner proceeding pro se and in forma pauperis in this civil rights action pursuant to 42 U.S.C. § 1983.

**I.   Introduction**

This action currently proceeds on Plaintiff's first amended complaint against Defendants Green, Wilson, and Rohrdanz for deliberate indifference to a substantial risk of serious harm in violation of the Eighth Amendment. (ECF No. 8.) Specifically, Plaintiff alleged that Defendants knew of a substantial risk of serious harm to him based on his placement at Pleasant Valley State Prison ("PVSP") because he was susceptible to a high risk of complications when contracting Valley Fever, and they were deliberately indifferent to that risk.

///

Currently before the Court is Defendants' motion for summary judgment pursuant to Federal Rule of Civil Procedure 56, arguing that there is no general issue of material fact and that they are entitled to judgment as a matter of law. (ECF No. 24.) Specifically, Defendants argue that the undisputed facts show that they (1) did not act with deliberate indifference towards Plaintiff in violation of his rights under the Eighth Amendment; (2) did not personally participate in a deprivation of Plaintiff's rights; and (3) are entitled to qualified immunity. (Id. at 1.) Defendants also submitted a statement of undisputed facts in support of their motion. (ECF No. 24-2.)

Plaintiff has opposed the motion, (ECF No. 31), and responded to Defendants' statement of undisputed facts, (ECF No. 32.) Defendants have replied to the opposition, (ECF No. 33), and to the response to their statement of facts, (ECF No. 34). The motion is deemed submitted. Local Rule 230(l).

## II.     Defendants' Motion for Summary Judgment

### A.     Legal Standards

Summary judgment is appropriate when it is demonstrated that there "is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party asserting that a fact cannot be disputed must support the assertion by "citing to particular parts of materials in the record, including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials. . . ." Fed. R. Civ. P. 56(c)(1)(A). Summary judgment should be entered, after adequate time for discovery and upon motion, against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial. See Celotex Corp. v. Catrett, 477 U.S. 317, 322 (1986). "[A] complete failure of proof concerning an essential element of the nonmoving party's case necessarily renders all other facts immaterial." Id.

If the moving party meets its initial responsibility, the burden then shifts to the opposing party to establish that a genuine issue as to any material fact actually does exist. See Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986). In attempting to establish the existence of this factual dispute, the opposing party may not rely upon the allegations or denials of their pleadings, but

is required to tender evidence of specific facts in the form of affidavits, and/or admissible discovery material, in support of its contention that the dispute exists or show that the materials cited by the movant do not establish the absence of a genuine dispute. See Fed. R. Civ. P. 56(c); Matsushita, 475 U.S. at 586 n.11. The opposing party must demonstrate that the fact in contention is material, meaning that a fact that might affect the outcome of the suit under the governing law, see Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248 (1986); T.W. Elec. Serv., Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 630 (9th Cir. 1987), and that the dispute is genuine, meaning that the evidence is such that a reasonable jury could return a verdict for the nonmoving party, see Wool v. Tandem Computers, Inc., 818 F.2d 1433, 1436 (9th Cir. 1987).

To show the existence of a factual dispute, the opposing party need not establish a material issue of fact conclusively in its favor. It is sufficient that "the claimed factual dispute be shown to require a jury or judge to resolve the parties' differing versions of the truth at trial." T.W. Elec. Serv., 809 F.2d at 631. Thus, the "purpose of summary judgment is to 'pierce the pleadings and to assess the proof in order to see whether there is a genuine need for trial.'" Matsushita, 475 U.S. at 587 (quoting Fed. R. Civ. P. 56(e) advisory committee's note on 1963 amendments).

In resolving the summary judgment motion, the evidence of the opposing party is to be believed. See Anderson, 477 U.S. at 255. All reasonable inferences that may be drawn from the facts placed before the court must be drawn in favor of the opposing party. See Matsushita, 475 U.S. at 587. Nevertheless, inferences are not drawn out of the air, and it is the opposing party's obligation to produce a factual predicate from which the inference may be drawn. See Richards v. Nielsen Freight Lines, 602 F. Supp. 1224, 1244-45 (E.D. Cal. 1985), aff'd, 810 F.2d 898, 902 (9th Cir. 1987). Finally, to demonstrate a genuine issue, the opposing party "must do more than simply show that there is some metaphysical doubt as to the material facts . . . .Where the record taken as a whole could not lead a rational trier of fact to find for the nonmoving party, there is no 'genuine issue for trial.'" Matsushita, 475 U.S. at 587 (citation omitted).

///

///

///

### B. Undisputed and Disputed Material Facts[1]

#### 1. Plaintiff's Transfer to Pleasant Valley State Prison and Diagnosis

On October 9, 2009, Plaintiff was transferred from the Sierra Conservation Center ("SCC") in Jamestown, California, to PVSP in Coalinga, California. (Pl.'s Undisputed Facts ¶ 1.) At the time Plaintiff was transferred to PVSP, there existed exclusionary criteria preventing certain high-risk inmates from being transferred to PVSP due to higher incidences of Valley Fever. (Id. at ¶ 3; Decl. of B. Green in Supp. of Defs.' Mot. for Summ. J. ("Green Decl."), ECF No. 24-5, ¶ 3; Decl. of D. Rohrdanz in Supp. of Defs.' Mot. for Summ. J. ("Rohrdanz Decl."), ECF No. 24-6, ¶ 2; Decl. of R. Wilson in Supp. of Defs.' Mot. for Summ. J. ("Wilson Decl."), ECF No. 24-4, ¶ 3.) The exclusion criteria in use in 2009 was set forth in a California Department of Corrections and Rehabilitation memorandum entitled, "Memorandum Re: Exclusion of Inmate-Patients Susceptible to Coccidioidiomycosis From Highest Risk (Hyperendemic) Area Institutions," dated November 20, 2007, by Suzan L. Hubbard, Director, and Dwight Winslow, M.D. (hereinafter "Hubbard-Winslow Memorandum"). (Green Decl. ¶ 3; Rohrdanz Decl. ¶ 2; Wilson Decl. ¶ 3.)

The Hubbard-Winslow Memorandum states, in pertinent part, as follows:

> The following memorandum provides direction on the transfer process of inmate-patients that meet coccidioidomycosis (cocci) susceptibility exclusion criteria from highest risk (hyperendemic) area institutions.
>
> …
>
> This approach includes identifying those inmate-patients most susceptible to developing severe or disseminated cocci and implementing strategies to prevent these susceptible inmate-patients from being housed in the hyperendemic area. Movement of these inmate-patients shall begin immediately. It is not necessary to transfer inmate-patients that have already been infected with cocci.

---

[1] See, generally, Plaintiff's Response to Defendants' Statement of Undisputed Facts ("Pl.'s Undisputed Facts") (ECF No. 32). Plaintiff denies some of Defendants' factual contentions without tendering any evidence in support of his contention that there is a material dispute. Plaintiff also declines to admit or deny certain facts based on a lack of knowledge.

To the extent that Defendants' factual assertions are based on admissible evidence, Plaintiff has failed to raise any genuine dispute of these facts in each instance where he does not deny the fact, or denies the fact without tendering admissible evidence in support of his contention that there is a material dispute. E.g., Kyger v. Oregon, 481 F. App'x 307 (9th Cir. 2012) ("The district court properly granted summary judgment because [the plaintiff] failed to introduce evidence sufficient to establish a genuine dispute of material fact as to any of his claims….") (citing Matsushita, 475 U.S. at 587).

The following institutions are located in the hyperendemic area:
…
Pleasant Valley State Prison
…

Based on DHS recommendations we are implementing the following plan, which includes:
1. Identifying susceptible inmate-patients in the institutions located in the hyperendemic area.
2. Transferring identified inmate-patients out of the hyperendemic area.
3. Developing a methodology as part of the Reception Center (RC) Intrasystem transfer process that includes identification and classification of inmate-patients at the highest risk of developing severe or disseminated cocci disease so that they are not transferred to an institution within the hyperendemic area.
4. Selecting environmental controls consistent with recommendations provided by DHS at institutions in the hyperendemic area.

It is imperative custody, classification, and health care staff closely collaborate to ensure effective and efficient implementation.

IMPLEMENTATION PROCEDURES- HEALTH CARE

The following clinical criteria, which define susceptible inmate-patients for morbidity related to cocci, will be used by health care staff to identify inmate-patients who cannot be housed at institutions within the hyperendemic area.

Criteria a.   All identified HIV infected inmate-patients
Criteria b.   History of lymphoma
Criteria c.   Status post solid organ transplant
Criteria d.   Chronic immunosuppressive therapy (e.g. severe rheumatoid arthritis)
Criteria e.   Moderate to severe Chronic Obstructive Pulmonary Disease (COPD) requiring ongoing intermittent or continuous oxygen therapy
Criteria f.   Inmate-patients with cancer on chemotherapy

The sources used to identify the above inmate-patients include:
1. Chronic disease lists
2. Pharmacy medication lists
3. Nursing input
4. Specialty clinic list
5. Return from a higher level of care, i.e., Hospital
6. Triage and treatment log
…

> For inmates arriving at institutions located within the hyperendemic area, the [Receiving and Release (R&R) Registered Nurse (RN)] shall review new arrivals to determine if they meet the cocci susceptibility exclusion criteria. If the answer is "Yes", the R&R, RN shall complete a CDCR Form 128-C indicating that due to environmental conditions (Valley Fever organism), (enter the criteria code, i.e. a-f), present at (enter prison name here) and the inmate's current health status, he must be transferred out of the hyperendemic area. The CDCR Form 128-C shall indicate whether inmate-patients are appropriate for general population housing….

(Green Decl., Exh. A, pp. 4-9; Rohrdanz Decl., Exh. A, pp. 4-9; Wilson Decl., Exh. A, pp. 4-9.)

On October 9, 2009, upon Plaintiff's transfer to PVSP, he underwent a medical evaluation in part to determine his susceptibility to Valley Fever, based on the exclusionary criteria in place at the time. (Decl. of Lucas L. Hennes in Supp. of Defs.' Mot. for Summ. J., ECF No. 24-3, Exh. A, June 10, 2015 Deposition of Clifford Smith, lines 27:14 to 28:9; Green Decl. ¶ 4; Rohrdanz Decl. ¶ 3; Wilson Decl. ¶ 4.) At that time, a Valley Fever Risk Criteria Checklist ("checklist") was prepared concerning Plaintiff. (Green Decl., Exh. B, p. 11; Rohrdanz Decl., Exh. B, p. 11; Wilson Decl., Exh. B, p. 11.) The checklist had boxes to indicate "yes" or "no" for each of the following: (1) history of lymphoma; (2) cancer inmate/patient on chemotherapy; (3) status post solid organ transplant; (4) chronic immuno-therapy (e.g., severe rheumatoid arthritis); (5) chronic lung disease requiring oxygen; (6) HIV infected inmate (all. no. CD4 count requirement); and (6) moderate or severe chronic lung disease. (Id.) All of the boxes on Plaintiff's checklist were checked "no." (Id.) There was also a space for comments at the bottom of the checklist, which was left blank. (Id.) The checklist did not identify Plaintiff's race.

On August 19, 2010, Plaintiff was diagnosed with Valley Fever. (Pl.'s Undisputed Facts ¶ 2.)

**2.   Defendants Green, Wilson, and Rohrdanz**

Defendant Green was a certified physician assistant at PVSP between the dates of October 9, 2009 and August 19, 2010. (Green Decl. ¶ 1.) Defendant Wilson was a certified physician assistant at PVSP between the dates of November 1, 2009 and August 19, 2010. (Wilson Decl. ¶ 1.) Defendant Rohrdanz was a physician at PVSP between the dates of October 9, 2009 and August 19, 2010. (Rohrdanz Decl. ¶ 1.)

Defendants Green, Wilson, and Rohrdanz do not recall meeting with Plaintiff or providing him medical care while he was at PVSP. (Green Decl. ¶ 5.) Plaintiff declares that after he was transferred

6

to PVSP, he spoke to each of Defendants Green, Wilson, and Rohrdanz on different dates, and requested that he be transferred out of PVSP. (Pl.'s Undisputed Facts, Decl. of Clifford Smith, ECF No. 32, p. 19.) Specifically, he requested a transfer because he feared his medical condition of COPD would subject him to a substantial risk of complications if he contracted Valley Fever. Plaintiff further declares that each of the Defendants denied his requests. (Id.) Plaintiff also submitted records showing that Defendant Rohrdanz prescribed Plaintiff some medications on April 22 and 23, 2010, and on August 4 and August 6, 2010. (Pl.'s Undisputed Facts, Medication Reconciliation Records, ECF No. 32, pp. 9-11.)[2]

Defendants Green, Wilson, and Rohrdanz declare that they were not involved in determining whether inmates should be transferred from PVSP because of susceptibility to Valley Fever. (Green Decl. ¶ 5; Wilson Decl. ¶ 5; Rohrdanz Decl. ¶ 4.) Nevertheless, Defendants declare that they were aware of the Hubbard-Winslow Memorandum, and assert that they had no discretion to vary from the criteria described in it when making any determination that a particular inmate was more susceptible to Valley Fever. (Green Decl. ¶ 3; Wilson Decl. ¶ 3; Rohrdanz Decl. ¶ 2.) Defendant Green also declares that, upon a review of Plaintiff's medical records and based on his awareness of the criteria set forth in the Hubbard-Winslow Memorandum, he has no reason to believe that Plaintiff was at any increased risk for contracting Valley Fever during his incarceration at PVSP. (Green Decl. ¶ 5.) Based on their awareness of the same criteria, Defendants Wilson and Rohrdanz agree. (Wilson Decl. ¶ 5; Rohrdanz Decl. ¶ 4.)

### C. Summary Judgment Arguments

Plaintiff's Eighth Amendment claims against Defendants Green, Wilson and Rohrdanz for deliberate indifference are based on allegations that they each knew that his medical condition placed him at a substantial risk of serious harm if he contracted Valley Fever while housed at PVSP, and they

---

[2] Plaintiff also states in his declaration that he believes that his request for transfer were denied based on efforts to maintain a certain inmate population at PSVP for financial or political gain. (ECF No. 32, p. 19.) This contention is speculative, and the Court will not consider it. Only declarations containing personal knowledge, setting forth facts admissible into evidence to which the declarant is competent to testify, are appropriate evidence to consider at the summary judgment stage. See Moran v. Selig, 447 F.3d 748, 759–60 (9th Cir. 2006); Jones v. Blanas, 393 F.3d 918, 923 (9th Cir. 2004); Lopez v. Smith, 203 F.3d 1122, 1132 n. 14 (9th Cir. 2000). See also 28 U.S.C. § 1746.

were deliberately indifferent to that risk. (ECF No. 8.) In Plaintiff's first amended complaint, he alleged that his medical records clearly identified him as having asthma, high blood pressure, heart disease, and COPD prior to being transferred to PVSP. (Id. at 4.) He further alleged that as an African-American, he was 1,000 times more likely to contract Valley Fever at PVSP. (Id. at 5.) Nevertheless, he was housed at PSVP for 10 months before contracting Valley Fever, and for an additional year after contracting Valley Fever before being transferred. His requests for transfer were ignored. (Id.)

Defendants argue that they are entitled to summary judgment in this action, because the undisputed facts show that they were not deliberately indifferent to any serious risk to Plaintiff, they did not personally participate in any deprivation of his constitutional rights, and they are entitled to qualified immunity. Plaintiff disagrees, arguing that he has sufficiently shown that once he arrived at PVSP, Defendants were deliberately indifferent in failing to have him transferred out of PVSP based on his medical condition, and that they further violated the Eighth Amendment by not having him immediately transferred to a different institution once he contracted Valley Fever, to prevent further infection. The Court will address each argument in turn.

**D.      Analysis**

Plaintiff's claims concern deliberate indifference to his increased health risks based on an exposure to a disease, Valley Fever, and his continued health risks based on continued exposure once he contracted the Valley Fever. Prison officials violate an inmate's Eighth Amendment rights by exposing him, with deliberate indifference, to conditions that "pose an unreasonable risk of serious damage to his future health." Helling v. McKinney, 509 U.S. 25, 35, 113 S. Ct. 2475, 2481, 125 L. Ed. 2d 22 (1993). This claim requires Plaintiff to establish both an objective and subjective element. The objective element requires him to show that he was exposed to conditions that presented an excessive risk of harm to him. Id. at 35-36, 2481-82. It also requires Plaintiff to show that the conditions were "so grave that it violates contemporary standards of decency to expose *anyone* unwillingly to such a risk." Id. at 36, 2482. In other words, Plaintiff must "show that the risk of which he complains is not one that today's society chooses to tolerate." Id.

The subjective element of the claim requires Plaintiff to show that each of the Defendants knew of and disregarded an excessive risk to his future health. See Coldwell v. Bannister, 763 F.3d

1060, 1066 (9th Cir. 2014) (quoting Toguchi v. Chung, 391 F.3d 1051, 1057 (9th Cir. 2004)). "[T]he official must both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." Id. (quoting Farmer v. Brennan, 511 U.S. 825, 837, 114 S. Ct. 1970, 128 L. Ed. 2d 811 (1994)). "Prison officials aren't deliberately indifferent to a prisoner's medical needs unless they act wantonly, . . . and whether an official's conduct can be characterized as 'wanton' depends upon the constraints facing [him]." Peralta v. Dillard, 744 F.3d 1076, 1082 (9th Cir. 2014) (internal quotations and citations omitted). Thus, "even if an official knows of a substantial risk, he's not liable 'if [he] responded reasonably'" under the circumstances. Id. (quoting Farmer, 511 U.S. at 844, 114 S. Ct. 1970).

Defendants argue that Plaintiff has not presented sufficient evidence to establish either the objective or subjective element of his claims against them. Without discussing whether Plaintiff has presented evidence in support, they note that he alleged that that at the time of his transfer to PVSP in 2009, he was an African-American inmate with a history of asthma, high blood pressure, heart disease, and COPD. (ECF No. 24-1, pp. 4-5.) Defendants contend that, under the undisputed material facts of this case, the Hubbard-Winslow Memorandum set forth the standard by which inmates would have been excluded from being housed at PVSP based on health risks, at the time Plaintiff was housed there. That exclusionary criteria only excluded inmates who (1) were HIV-infected; (2) had a history of lymphoma; (3) had received a solid-organ transplant; (4) were receiving chronic immunosuppressive therapy; (5) had moderate to severe COPD requiring ongoing intermittent or continuous oxygen therapy; or (6) had cancer and were on chemotherapy, from placement at PVSP. Thus, despite Plaintiff's contentions, his race did not cause him to fall within the exclusion criteria, nor did his asthma, high blood pressure, or heart disease. And, although the criteria does include COPD, it only includes COPD at a moderate to severe level requiring oxygen therapy. Defendants argue, therefore, that the undisputed material facts do not support Plaintiff's claim that he was at an increased risk to his health by being housed at PVSP.

Regarding the subjective element of Plaintiff's claim, Defendants argue that based on the criteria in the Hubbard-Winslow Memorandum, they would not have reasonably believed that he was at any increased risk of harm from contracting Valley Fever. Further, Defendants have declared that

they could not have recommended his transfer despite the fact that he did not meet that criteria. Plaintiff offers no evidence to dispute these facts and therefore, Defendants argue, Plaintiff cannot show that Defendants deliberately disregarded any objectively serious risk to Plaintiff's health. (ECF No. 24-1, pp. 6-7.)

Plaintiff disputes Defendants' arguments on several grounds, none of which the Court finds raise a disputed issue of material fact. First, Plaintiff argues that African-Americans are at a higher risk of contracting Valley Fever, and that Defendants should have been aware of that fact and the increased risks to him, regardless of whether he met the criteria in the Hubbard-Winslow Memorandum. (ECF No. 32, ¶¶ 11a, 16a, 21a.) In support, Plaintiff cites complaint allegations discussed in Jackson v. California, No. 1:13-CV-01055-LJO-SAB, 2015 WL 2414938 (E.D. Cal. May 20, 2015), report and recommendation adopted sub nom. Jackson v. Brown, 134 F. Supp. 3d 1237 (E.D. Cal. 2015). The plaintiffs in Jackson alleged that epidemiological studies establish that African-Americans, among others, are at a higher risk for developing Valley Fever, and that articles were published in the early and mid-1990s reporting this fact and reporting that PVSP is located in one of the most likely places to generate Valley Fever infections. Id. at *2.

These studies, articles, and other contentions that Plaintiff attempts to rely upon are not part of the evidence or record in this case. In other words, Plaintiff cannot rely on allegations in an unrelated case involving different parties as evidence to support his arguments; he must provide or cite to admissible evidence in the record of this action to support his claims. Plaintiff has further failed to cite any evidence that Defendants have any knowledge of these studies, reports, or information discussed in Jackson. Thus, Plaintiff has failed to raise a genuine dispute for trial regarding this issue.

Plaintiff next argues that Defendants should have recommended he be transferred from PVSP based on the multiple, chronic illnesses he suffered from while he was housed at PVSP, regardless of whether he met any of the criteria set forth in the Hubbard-Winslow Memorandum. (ECF No. 31, pp. 3-5.) He asserts that the criteria in the Hubbard-Winslow Memorandum merely presented one basis for recommending transfer of an inmate, and since his chronic conditions also posed a higher risk of complications from contracting Valley Fever, he should have been transferred based on those conditions. Although Plaintiff refers to his chronic conditions collectively, he also appears to

separately argue that he should have been excluded from housing at PVSP solely because he suffered from moderate COPD. (ECF No. 32, ¶ 6a.)

In support of Plaintiff's contentions, he cites his own declaration, and the declaration from an inmate named Paul Roberts ("Inmate Roberts"), who was formerly housed at PVSP. (ECF No. 32, p. 18.) Plaintiff also cites to findings set forth in Roberts v. California Dep't of Corr. & Rehab., No. 2:12-CV-0247 KJM AC, 2014 WL 2109925, (E.D. Cal. May 20, 2014). Inmate Roberts' declaration states that he was the plaintiff in that case, and the order in Roberts discusses that he was transferred to PVSP in March 2008, but by April 2008, it was determined by a doctor that he could not be housed there due to a medical condition that increased his risk of complications from Valley Fever infections. Id. at *5. Specifically, Inmate Roberts was recommended for transfer from PVSP to High Desert State Prison due to his COPD "and his numerous enemies." Id.

In his declaration, Inmate Roberts states that at a medical follow-up approximately two weeks after his arrival at PVSP, his doctor reviewed his medical file and determined that he suffered from moderate COPD, and the doctor immediately submitted a request that he be transferred from PVSP. Inmate Roberts further declares that he was not on oxygen therapy, and had been prescribed a hand-held inhaler that he believes was Albuteral. As discussed, Plaintiff's declaration states that he had COPD at the time he was transferred to PVSP, and that he alerted each of the Defendants to his COPD and requested that he be transferred because of it, but those requests were denied. (ECF No. 32, p. 19.)

Taking Plaintiff's evidence as true and considering it in the light most favorable to him, he still has not raised a genuine dispute of material fact regarding whether Defendants should have recommended his transfer from PVSP at any time due to his chronic medical conditions, including his COPD. First, regarding Plaintiff's reliance on the order in Roberts, as noted above, Plaintiff must rely on evidence in the record in this case to support his arguments, not contentions in other cases involving other parties. That another court found that a doctor determined that an inmate in another action had moderate COPD, and that inmate was recommended for transfer out of PVSP because of his COPD, is neither relevant as to these defendants nor binding on this Court, nor are those findings admissible evidence in this matter.

///

Turning to Inmate Roberts declaration submitted in this matter, even taken as true, it has little relevance to this case, and does not support Plaintiff's position. Inmate Roberts' medical conditions and his doctor's recommendations regarding his placement are not at issue in this matter. Rather, it is the alleged risk of serious harm to Plaintiff, and Defendants' alleged knowledge of and actions in relation to that risk, that are at issue. Inmate Roberts does not declare any facts or information relevant to those issues.

Also, Inmate Roberts' declaration that a doctor recommended he be transferred from PVSP does not show that Defendants should have recommended Plaintiff's transfer, even if both Inmate Roberts and Plaintiff suffered from COPD while they were housed at PVSP. Inmate Roberts' declaration is sufficient to show that Inmate Roberts was recommended to be transferred due to his COPD, despite the fact that his COPD, while moderate, did not require oxygen therapy. The reasonably inference from this fact is that the doctor who recommended Inmate Roberts' transfer did not comply with the standards set forth in the Hubbard-Winslow Memorandum, either knowingly or through some mistake. However, a jury could not reasonably extrapolate from this fact that all doctors at PVSP were permitted, much less required, to recommend transfer for any inmate suffering from moderate COPD that did not require oxygen therapy. Although the Court is required to give Plaintiff the benefit of reasonable inferences from the evidence he presents, it need not credit strained leaps of logic or unwarranted assumptions. The sole evidence before the Court is that defendants had no discretion to vary from the criteria described in the Memorandum when making any determination that a particular inmate was more susceptible to Valley Fever. A reasonable jury could not infer that because one doctor may have deviated from the criteria set forth in the Hubbard-Winslow Memorandum, that any person with COPD not requiring oxygen therapy faced an unreasonable risk to their health while being housed at PVSP, and that all doctors at PVSP should have disregarded that criteria, including Defendants.

Regarding whether Plaintiff has shown that he met the exclusionary criteria in the Hubbard-Winslow Memorandum based on his COPD, the only evidence in the record Plaintiff cites does not establish that his COPD was moderate, much less that he required oxygen therapy. His declaration only states that he had COPD. As discussed above, the checklist filled-out for him upon his transfer to

12

PVSP denies that he had any moderate or severe chronic lung disease, and denies that he required oxygen. Plaintiff also fails to present any evidence to support his vague argument that any of his other "multiple chronic illness[es]," alone or in combination, required that he be transferred from PVSP due to an increased risk of complications from contracting Valley Fever. Thus, Plaintiff has not raised any genuine dispute of material fact that his COPD or other chronic health conditions posed an unreasonable risk to his health due to being housed at PVSP, or that any Defendants were deliberately indifferent to that risk.

Plaintiff bears the burden of proof at trial in this matter on his Eighth Amendment claims. Defendants, as the moving parties on this summary judgment motion, have shown that there is an absence of evidence to support Plaintiff's claims, as the undisputed material facts do not support his claims. This shifts the burden to Plaintiff to designate specific facts demonstrating the existence of genuine issues for trial. For the reasons explained above, although Plaintiff has submitted some evidence showing some factual dispute, he has not shown any genuine dispute of any material facts at issue here. Plaintiff must "show more than the mere existence of a scintilla of evidence" in support of his arguments to survive summary judgment. In re Oracle Corp. Sec. Litig., 627 F.3d 376, 387 (9th Cir. 2010) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 252, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)). He has not met that burden here.

Because the Court recommends granting summary judgment to all Defendants on all of Plaintiff's claims as explained above, it will not address Defendants' alternative arguments that they are entitled to qualified immunity.

### III. Conclusion and Recommendation

Based on the foregoing, the Court HEREBY RECOMMENDS that Defendants' motion for summary judgment, dated December 28, 2015 (ECF No. 24), be GRANTED.

These Findings and Recommendations will be submitted to the United States District Judge assigned to the case, pursuant to the provisions of Title 28 U.S.C. § 636(b)(l). Within **fourteen (14) days** after being served with these Findings and Recommendations, the parties may file written objections with the court. The document should be captioned "Objections to Magistrate Judge's Findings and Recommendation."

The parties are advised that failure to file objections within the specified time may result in the waiver of the "right to challenge the magistrate's factual findings" on appeal. <u>Wilkerson v. Wheeler</u>, 772 F.3d 834, 839 (9th Cir. 2014) (citing <u>Baxter v. Sullivan</u>, 923 F.2d 1391, 1394 (9th Cir. 1991)).

IT IS SO ORDERED.

Dated: **September 8, 2016**          /s/ Barbara A. McAuliffe
                                       UNITED STATES MAGISTRATE JUDGE